UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HILDA L. SOLIS, Secretary of Labor, United States Department of Labor, | ) ) ) | CASE NO. 1:11-CV-0529 AWI GSA |
| Plaintiff, | ) ) | ORDER DENYING REQUEST FOR PRELIMINARY INJUNCTION |
| v. | ) ) | |
| NATIONAL EMERGENCY MEDICAL SERVICES ASSOCIATION, | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff has made a motion for preliminary injunction seeking to have James Gambone appointed as president of NEMSA pending the resolution of the case.  Defendant opposes the motion.  The court has reviewed the papers filed and has determined that the motion is suitable for decision without further oral argument. See Local Rule 230(g).  The motion is denied as the operative law provides for a new election as relief and not appointment of an interim president.

## I. History

Plaintiff Department of Labor ("DOL") is representing James Gambone ("Gambone") who is seeking to become the president of the board of directors of Defendant National Emergency Medical Services Association ("NEMSA"), a union of emergency medical technicians ("EMT") headquartered in Modesto, California.  Gambone was an EMT working for third party American Medical Response ("AMR").  In 2006, NEMSA hired Gambone part time

to organize his co-workers.  After NEMSA was certified to represent AMR's workers, Gambone

worked simultaneously for NEMSA and AMR until August 29, 2007 when he was fired by

AMR.  NEMSA, on behalf of Gambone, challenged the termination with the National Labor

Relations Board ("NLRB"); that dispute has not yet been fully resolved.  In the intrim, Gambone

worked for NEMSA full time.  Whether Gambone ever became a member of the NEMSA union

is a disputed fact.

NEMSA scheduled elections to be held during the summer of 2010 for the positions of

president and secretary of the board of directors of NEMSA.  The term of office in three years.

Gambone, seeking to be put on the ballot, submitted paperwork nominating himself as president.

NEMSA refused to include Gambone on the ballot arguing that Gambone did not meet the

eligibility requirements.  Gambone then launched a write-in campaign.  The ballots were sent out

with directions that they had to be received by July 9, 2010.  On July 12, 2010, the ballots were

counted.  Also running for president were Larry Lucas ("Lucas") and Torren Colcord

("Colcord"), the incumbent president.  NEMSA did not count the ballots in which members

wrote in Gambone's name and declared Lucase the winner, asserting that NEMSA's bylaws do

not provide for the acceptance of write-in votes.  Gambone wrote NEMSA on July 19, 2010 to

contest the results.  NEMSA rejected Gambone's challenge.  NEMSA recounted the ballots on

July 30, 2010 and again declared Lucas the winner.

Meanwhile, Gambone, as an employee of NEMSA, organized a new union of NEMSA

employees, the NEMSA Representatives Employee Association ("REA").  While NEMSA is a

union itself, NEMSA employees (distinct from EMTs who are members of the NEMSA union

and work for third parties like AMR) formed REA.  Gambone became interim president of REA

and filed a petition with the NLRB seeking certification on May 3, 2010.  NEMSA offerred to

recognize the REA by letter dated May 5, 2010.  NEMSA then fired Gambone on May 10, 2010.

On August 2, 2010, Gambone sought arbitration of the election dispute in accord with

NEMSA bylaws.  On August 24 and 15, 2010, Gambone and NEMSA took part in an arbitration

hearing which took place at NEMSA's headquarters.  NEMSA objected to the arbitrability of the

dispute, arguing that Gambone was not a NEMSA union member covered by the bylaws.  Upon

1  the arbitrator's announcement of a preliminary conclusion that the dispute was arbitrable,

2  NEMSA withdrew from the proceedings and ordered the arbitrator and Gambone to vacate the

3  premises.  The arbitration proceeded at another location without NEMSA's participation.  On

4  September 2, 2010, the arbitrator found in favor of Gambone and ordered his installation as

5  president of NEMSA.  Thereafter, Gambone resigned as interim president of REA.  Sometime

6  after the arbitration award, Gambone and allied NEMSA union members took control of

7  NEMSA headquarters for a few days before Colcord had him evicted from the building.  Lucas

8  resigned as president of NEMSA on December 8, 2010.  NEMSA's board of directors appointed

9  Eric Stephens, the then vice president, as president.

10      Meanwhile, Gambone filed a complaint with DOL on September 27, 2010.  DOL

11  investigated the matter.  DOL's tabulation of the presidential election ballots concluded that

12  Gambone received 205 votes compared with Lucas's 128 votes and Colcord's 111 votes.  At an

13  unspecified date, NEMSA filed suit in Stanislaus County Superior Court against Gambone and

14  the other individuals who took over the headquarters, alleging (among other claims) theft,

15  trespass, and breach of fiduciary duties.  The state court case was stayed on November 9, 2010

16  pending DOL action.

17      DOL brought this present suit on March 28, 2011, under Title IV of the Labor-

18  Management Reporting and Disclosure Act ("LMRDA"), alleging NEMSA violated union

19  election procedures set out in 29 U.S.C. §481.  DOL also filed a motion for preliminary

20  injunction, seeking to have Gambone installed as president in the interim. Doc. 4.  NEMSA filed

21  a motion to dismiss, raising issues of subject matter jurisdiction. Doc. 6.  In response, DOL filed

22  an amended complaint which mooted the motion to dismiss. Doc. 23, Part 2.  NEMSA has filed

23  an opposition to the motion for preliminary injunction and DOL has filed an opposition. Docs. 12

24  and 33.

25

26                          **II. Legal Standards**

27      A party seeking a preliminary injunction must demonstrate that "he is likely to succeed on

28  the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

1   balance of equities tips in his favor, and that an injunction is in the public interest." <u>Winter v.</u>

2   <u>NRDC, Inc.</u>, 129 S.Ct. 365, 374 (2008), citations omitted.  Following the U.S. Supreme Court's

3   holding in <u>Winter</u>, the Ninth Circuit has held that, "[t]o the extent that our cases have suggested a

4   lesser standard, they are no longer controlling, or even viable." <u>Stormans, Inc. v. Selecky</u>, 586

5   F.3d 1109, 1127 (9th Cir. 2009).  "In each case, courts must balance the competing claims of

6   injury and must consider the effect on each party of the granting or withholding of the requested

7   relief." <u>Indep. Liv. Cntr. of Southern Cal., Inc. v. Maxwell-Jolly</u>, 572 F.3d 644, 651 (9th Cir.

8   2009), citations omitted.

9

10                                  **III. Discussion**

11   **A. Subject Matter Jurisdiction**

12         In the mooted motion to dismiss, NEMSA raised a subject matter jurisdiction challenge.

13   Whenever subject matter jurisdiction is in doubt, courts have an independent duty to

14   affirmatively resolve ths issue. See <u>Allstate Ins. Co. v. Hughes</u>, 358 F.3d 1089, 1093 (9th Cir.

15   2003).  DOL is seeking to install Gambone as president of the board of directors of NEMSA.

16   Gambone was also president of REA.  NEMSA cites to the National Labor Relation Act which

17   states in part, "It shall be an unfair labor practice for an employer...(2) to dominate or interfere

18   with the formation or administration of any labor organization or contribute financial or other

19   support to it." 29 U.S.C. §158(a).  NEMSA asserts that Gambone's past leadership of REA

20   would illegally entangle NEMSA with REA if he were to become president of NEMSA; "This

21   Court therefore does not have subject matter jurisdiction over this claim because it would be

22   illegal for Mr. Gambone to hold office on the Board of NEMSA in any capacity." Doc. 8, Motion

23   to Dismiss Brief, at 13:14-17.

24         DOL brings this suit pursuant to 29 U.S.C. §482(b), which specifically authorizes DOL to

25   bring "a civil action against the labor organization as an entity in the district court of the United

26   States in which such labor organization maintains its principal office to set aside the invalid

27   election, if any, and to direct the conduct of an election or hearing and vote upon the removal of

28   officers under the supervision of the Secretary and in accordance with the provisions of this title

                                          **4**

1    and such rules and regulations as the Secretary may prescribe."  NEMSA's argument goes to the

2    merits of the case and the propriety of the relief sought, not subject matter jurisdiction.  "Subject

3    matter jurisdiction defines the court's authority to hear a given type of case." Carlsbad Tech., Inc.

4    v. HIF Bio, Inc., 129 S. Ct. 1862, 1866 (2009), citations omitted.  The alleged conflict of interest

5    between NEMSA and REA does not impair this court's authority to decide the dispute.

6

7    **B. Available Remedies**

8         DOL alleges NEMSA has violated Title IV of the LMRDA, which states in relevant part:

9         In any election required by this section which is to be held by secret ballot a reasonable
10        opportunity shall be given for the nomination of candidates and every member in good
          standing shall be eligible to be a candidate and to hold office (subject to section 504 and
11        to reasonable qualifications uniformly imposed) and shall have the right to vote for or
          otherwise support the candidate or candidates of his choice, without being subject to
12        penalty, discipline, or improper interference or reprisal of any kind by such organization
          or any member thereof....The votes cast by members of each local labor organization shall
13        be counted, and the results published, separately.

14   29 U.S.C. §481.  As stated above, 29 U.S.C. §482(b) specifically empowers DOL to enforce 29

15   U.S.C. §481 by bringing suit "to set aside the invalid election, if any, and to direct the conduct of

16   an election or hearing and vote upon the removal of officers under the supervision of the

17   Secretary and in accordance with the provisions of this title and such rules and regulations as the

18   Secretary may prescribe."  Title 29 U.S.C. §482 does not state that DOL can request a direct

19   appointment of the position; in fact, it states, "The challenged election shall be presumed valid

20   pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the

21   organization shall be conducted by the officers elected or in such other manner as its constitution

22   and bylaws may provide." 29 U.S.C. §482(a).  Title 29 U.S.C. §483 states, "The remedy

23   provided by this title for challenging an election already conducted shall be exclusive."

24   Notwithstanding this language, DOL seeks a preliminary injunction for the appointment of

25   Gambone as president.

26        DOL has cited to cases which have granted this relief.  A few courts have done do

27   without discussing the limitations of the 29 U.S.C. §482(b) text. See Marshall v. Local Lodge

28   No. 875, etc., 1979 U.S. Dist. LEXIS 10036 (S.D. Miss. Sept. 4, 1979); Donovan v. Local 831,

1    1982 WL 31355  (C.D. Cal. Apr. 6, 1982); <u>Dole v. National Alliance of Postal & Federal</u>

2    <u>Employees</u>, 725 F. Supp. 56 (D.D.C. 1989) (trial on the merits and hearing for preliminary

3    injunction consolidated).  In another case, the parties mutually "agreed that the court has the

4    authority to declare the second election conducted by UTU null and void and require UTU to

5    reinstate Mr. Elliott as delegate to the International Convention." <u>Brock v. United Transp. Union</u>,

6    1987 WL 45347, *4 (N.D. Ind. Sept 9, 1987).

7        In a Ninth Circuit case cited by DOL, the court issued a preliminary injunction under

8    Title I of the LMRDA (29 U.S.C. §412) which allows an individual to sue to vindicate his/her

9    right to vote in and nominate candidates for union elections, ruling that a DOL suit under Title

10    IV did not completely preempt an individual's right to seek relief under Title I; the dicta

11    recognized "that remedies under Title IV are inherently time consuming, that the aggrieved union

12    member has no control over the litigation once the complaint is filed by the Secretary, and that

13    immediate redress is impossible since the winner of the election remains in office pending

14    resolution of the Title IV proceedings." <u>Kupau v. Yamamoto</u>, 622 F.2d 449, 454-55 (9th Cir.

15    1980).  Courts that have examined the actual language of Title IV have generally come to the

16    same conclusion. See <u>Brock v. Metropolitan Dist. Council of Carpenters</u>, 653 F. Supp. 289, 298

17    (E.D. Pa. 1987) ("the Secretary has not provided this court with any statutory or judicial authority

18    to support the proposition that the Secretary of Labor possesses the authority to issue a

19    supervisory instruction ordering the reinstatement of a union member to union office. It is my

20    view that the Secretary in this case does not possess the authority to order the reinstatement of

21    McCloskey to the elected office of recording secretary"); <u>Martin v. Auto Workers Local 152</u>,

22    1991 WL 496963, *3 (N.D. Ill. Sept. 5, 1991) ("we would be overstepping our bounds by

23    ordering the Local to install Stacy as Chairman of its Grievance Committee....to order the

24    installation of Stacy would not further the goals of the LMRDA for the fundamental reason that

25    the Court would be denying the union members their right to vote").

26        DOL also argues that, consonant with 29 U.S.C. §482's direction that "The challenged

27    election shall be presumed valid pending a final decision," the court should install Gambone as

28    interim president because he received the largest number of votes if the write in ballots are

counted. Doc. 33, Reply, at 5:5-13.  DOL provides no legal support for its interpretation of the statute.  Case law suggests that the status quo results of a challenged election is the position taken by a defendant union. See <u>Martin v. Auto Workers Local 152</u>, 1991 WL 496963, *2 (N.D. Ill. Sept. 5, 1991) (union refused to abide by the results of an election; the court refused to install the election winner pending a final resolution of the case).  Title 29 U.S.C. §482 does not provide for the relief DOL seeks.

### IV. Order

The previously set hearing date of June 13, 2011 is VACATED.  Plaintiff DOL's motion for preliminary injunction is DENIED.


IT IS SO ORDERED.

Dated:    June 9, 2011                                       

                      CHIEF UNITED STATES DISTRICT JUDGE