UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILDA L. SOLIS, Secretary of Labor, United States Department of Labor, ) ) ) Plaintiff, ) ) v. ) ) NATIONAL EMERGENCY MEDICAL ) SERVICES ASSOCIATION, ) ) Defendant. ) ) | CASE NO. 1:11-CV-0529 AWI GSA ORDER RE: MOTION TO DISMISS (Docs. 38 and 49) |

Defendant has made a motion to dismiss for lack of subject matter jurisdiction, or in the alternative for failure to state a claim. Plaintiff opposes the motion. Subject matter jurisdiction exists in this case. Plaintiff's request to have Gambone installed as NEMSA president is dismissed but the balance of Plaintiff's claims survives. Plaintiff is granted leave to amend.

**I. History**

Plaintiff Department of Labor ("DOL") is representing James Gambone ("Gambone") who is seeking to become the president of the board of directors of Defendant National Emergency Medical Services Association ("NEMSA"), a union of emergency medical technicians ("EMT") headquartered in Modesto, California. Gambone was an EMT working for third party American Medical Response ("AMR"). In 2006, NEMSA hired Gambone part time to organize his co-workers. After NEMSA was certified to represent AMR's workers, Gambone

worked simultaneously for NEMSA and AMR until August 29, 2007 when he was fired by AMR. NEMSA, on behalf of Gambone, challenged the termination with the National Labor Relations Board ("NLRB"), alleging the termination was in retaliation for protected union activity. In the interim, Gambone worked for NEMSA full time. Whether Gambone ever became a member of the NEMSA union is a disputed fact.

NEMSA scheduled elections to be held during the summer of 2010 for the positions of president and secretary of the board of directors of NEMSA. The term of office in three years. Gambone, seeking to be put on the ballot, submitted paperwork nominating himself as president. NEMSA refused to include Gambone on the ballot arguing that Gambone did not meet the eligibility requirements. Gambone then launched a write-in campaign. The ballots were sent out with directions that they had to be received by July 9, 2010. On July 12, 2010, the ballots were counted. Also running for president were Larry Lucas ("Lucas") and Torren Colcord ("Colcord"), the incumbent president. NEMSA did not count the ballots in which members wrote in Gambone's name and declared Lucas the winner, asserting that NEMSA's bylaws do not provide for the acceptance of write-in votes. Gambone wrote NEMSA on July 19, 2010 to contest the results. NEMSA rejected Gambone's challenge. NEMSA recounted the ballots on July 30, 2010 and again declared Lucas the winner.

Meanwhile, Gambone, as an employee of NEMSA, organized a new union of NEMSA employees, the NEMSA Representatives Employee Association ("REA"). While NEMSA is a union itself, NEMSA employees (distinct from EMTs who are members of the NEMSA union and work for third parties like AMR) formed REA. Gambone became interim president of REA and filed a petition with the NLRB seeking certification on May 3, 2010. NEMSA offered to recognize the REA by letter dated May 5, 2010. NEMSA then fired Gambone on May 10, 2010.

On August 2, 2010, Gambone sought arbitration of the election dispute in accord with NEMSA bylaws. On August 24 and 15, 2010, Gambone and NEMSA took part in an arbitration hearing which took place at NEMSA's headquarters. NEMSA objected to the arbitrability of the dispute, arguing that Gambone was not a NEMSA union member covered by the bylaws. Upon the arbitrator's announcement of a preliminary conclusion that the dispute was arbitrable,

NEMSA withdrew from the proceedings and ordered the arbitrator and Gambone to vacate the premises. The arbitration proceeded at another location without NEMSA's participation. On September 2, 2010, the arbitrator found in favor of Gambone and ordered his installation as president of NEMSA. Thereafter, Gambone resigned as interim president of REA. Sometime after the arbitration award, Gambone and allied NEMSA union members took control of NEMSA headquarters for a few days before Colcord had him evicted from the building. Lucas resigned as president of NEMSA on December 8, 2010. NEMSA's board of directors appointed Eric Stephens, the then vice president, as president.

Meanwhile, Gambone filed a complaint with DOL on September 27, 2010. DOL investigated the matter. DOL's tabulation of the presidential election ballots concluded that Gambone received 205 votes compared with Lucas's 128 votes and Colcord's 111 votes. At an unspecified date, NEMSA filed suit in Stanislaus County Superior Court against Gambone and the other individuals who took over the headquarters, alleging (among other claims) theft, trespass, and breach of fiduciary duties. The state court case was stayed on November 9, 2010 pending DOL action.

DOL brought this present suit on March 28, 2011, under Title IV of the Labor-Management Reporting and Disclosure Act ("LMRDA"), alleging NEMSA violated union election procedures set out in 29 U.S.C. §481. DOL's operative complaint, the first amended complaint ("FAC"), seeks to have Gambone installed as NEMSA president or, in the alternative, for new elections under DOL supervision. Doc. 23, Part 2. DOL also filed a motion for preliminary injunction seeking to have Gambone installed as president pending resolution of the case. Doc. 4. This court denied the motion, ruling that Title IV did not allow for installation of Gambone as interim relief. Doc. 35. Subsequent to that ruling, on June 24, 2011, the NLRB made a final determination that Gambone was not improperly fired by AMR. Doc. 47, Ex. 1.

On June 10, 2011, NEMSA moved to dismiss for lack of subject matter jurisdiction, or in the alternative for failure to state a claim, arguing that Gambone can not be installed as NEMSA president for a variety of reasons. Doc. 38. DOL opposed the motion, noting the recent NLRB ruling. Doc. 45. In reply, NEMSA argued that the NLRB decision was an additional reason why

3

Gambone could not be installed as NEMSA president. Doc. 46.  The matter was taken under submission without oral argument.

Subsequent to that order, DOL has requested leave to amend. Doc. 49.  DOL no longer seeks to have Gambone installed as NEMSA president.  NEMSA opposes leave to amend as it does not resolve all of its motion to dismiss arguments. Doc. 50.  To satisfy NEMSA's concerns, the court addresses the motion to dismiss on the merits.

## II. Legal Standards

Federal Rule Civil Procedure 12(b)(1) allows for a motion to dismiss based on lack of subject matter jurisdiction.  It is a fundamental precept that federal courts are courts of limited jurisdiction. Vacek v. UPS, 447 F.3d 1248, 1250 (9th Cir. 2006).  Limits upon federal jurisdiction must not be disregarded or evaded. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978).  "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." A-Z Int'l v. Phillips, 323 F.3d 1141, 1145 (9th Cir. 2003); General Atomic Co. v. United Nuclear Corp., 655 F.2d 968 (9th Cir. 1981).  The plaintiff has the burden to establish that subject matter jurisdiction is proper. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  A Rule 12(b)(1) motion may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

When a defendant makes a factual challenge "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  The court need not presume the truthfulness of the plaintiff's allegations under a factual attack. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  Where the jurisdictional issue and the merits of the case are not factually completely intermeshed or intertwined, the court may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, including resolving factual disputes when

1 necessary. St. Clair v. Chico, 880 F.2d 199, 201-02 (9th Cir. 1989).

2       Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)....a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007), citations omitted. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown that the pleader is entitled to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009), citations omitted. The court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). The court must also assume that "general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990), citing Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds at 127 S. Ct. 1955, 1969. Thus, the determinative question is whether there is any set of "facts that could be proved consistent with the allegations of the complaint" that would entitle plaintiff to some relief. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). At the other bound, courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated...laws in ways that have not

been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint. "There are, however, two exceptions....First, a court may consider material which is properly submitted as part of the complaint on a motion to dismiss...If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them. Second, under Fed. R. Evid. 201, a court may take judicial notice of matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001), citations omitted. The Ninth Circuit later gave a separate definition of "the 'incorporation by reference' doctrine, which permits us to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading. We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005), citations omitted. "[A] court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss. Facts raised for the first time in opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003), citations omitted.

If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without prejudice, and with or without leave to amend. "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc), quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX,

Inc., 298 F.3d 893, 898 (9th Cir. 2002).

### III. Discussion

DOL has filed suit pursuant to 29 U.S.C. §482 which states that when a union election violates the rules set out in 29 U.S.C. §481, DOL may "bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this title [29 U.S.C. §§481 et seq.] and such rules and regulations as the Secretary may prescribe." 29 U.S.C. §482(b). NEMSA argues there is no subject matter jurisdiction because Gambone can not be installed as NEMSA president for three reasons. First, Gambone has influence in REA as a past president. If he were to become NEMSA president, he would represent management, whose interests are often in opposition to REA. Such a situation could violate 29 U.S.C. §158(a) which seeks to insulate unions from management meddling. Second, the plain terms of 29 U.S.C. §482 specify that relief constitutes new elections run by DOL and not direct installation of the DOL's preferred candidate. Third, the NLRB's recent ruling removes Gambone's status as a member in good standing of the NEMSA union, rendering him unable to assume the office of NEMSA president. NEMSA has provided the NLRB's final ruling finding that AMR's firing of Gambone was not motivated by anti-union retaliation. Doc. 47, Ex. 1. The NLRB's decision is judicially noticed as a fact capable of accurate and ready determination under Fed. R. Civ. Proc. 201.

As a preliminary manner, DOL "notes that it has requested, as an alternative remedy, that the court order a new election under the Department's supervision....NEMSA's argument that the remedy of installation is unavailable cannot provide a basis for dismissing the entire complaint." Doc. 45, Opposition, at 9:25-28 n.2. DOL is correct; subject matter jurisdiction exists based on the plain text of 29 U.S.C. §482. Apart from installing Gambone, DOL has an interest in conducting a new election if 29 U.S.C. §481 was violated. See Marshall v. Teamsters Steel Haulers, 1979 WL 15500, *1 (W.D. Pa., Aug. 16, 1979) (complaining union member no longer

eligible to hold office but case continues to determine if new elections necessary).  Regarding the requested relief of installation, NEMSA's first argument has already been analyzed and dismissed in the order denying the preliminary injunction.  NEMSA's second argument is legally complex and need not be addressed as the third argument definitively shows that Gambone is not eligible to be NEMSA president based on the parties' representations.

As DOL states, "Defendant's Constitution, Article VI, Section 3, states that a 'member in good standing for a minimum of twenty-four (24) consecutive months as of the date he/she will take office...' may serve as President....Defendant's Constitution, Article IV, Section 1(A) states, 'Regular members who are terminated or suspended from employment by their employers, and whose terminations or suspensions are under appeal shall not lose their status as Regular members solely by virtue of their terminations or suspensions from employment.'" Doc. 23, Part 2, FAC, at 3:20-22 and 4:3-6.  DOL is seeking to enforce 29 U.S.C. §481(e) which requires, in relevant part, that "every member in good standing shall be eligible to be a candidate and to hold office."  With the loss of the NLRB appeal, Gambone is no longer a member in good standing of NEMSA and thus is no longer eligible to be NEMSA president.  DOL implicitly recognizes this problem in its statement that "The pending status of [the NLRB appeal] during the 2010 election is the basis for the Department's determination that NEMSA improperly found that Gambone was no longer a union member and thus not eligible to run for union office. While this new development does not affect the Department's position that NEMSA's 2010 election for the office of President violated the LMRDA, it may affect the appropriateness of installing Gambone at this time. The Department is assessing whether to modify its request for relief." Doc. 45, Opposition, at 2:25-28 n.1.  DOL proposed second amended complaint implicitly recognizes that the relief sought is no longer available.

### IV. Order

Defendant NEMSA's motion to dismiss for lack of subject matter jurisdiction is DENIED.  Defendant NEMSA's motion to dismiss for failure to state a claim is GRANTED in part and DENIED in part.  DOL's requested relief that Gambone be installed as NEMSA

president is DISMISSED without prejudice.  DOL's proposed second amended complaint appears to consonant with the rulings of this Order.  DOL's request for leave to amend is GRANTED.

IT IS SO ORDERED.

Dated: __August 12, 2011__                              /s/ signature
                                                CHIEF UNITED STATES DISTRICT JUDGE